[S. F. No. 17248. In Bank. Oct. 28, 1947.]

ELEVATOR OPERATORS AND STARTERS' UNION, LOCAL 117, et al., Respondents, v. FREDERICK NEWMAN, Appellant.

[S. F. No. 17577. In Bank. Oct. 28, 1947.]

FREDERICK NEWMAN, Appellant, v. ELEVATOR OPERATORS AND STARTERS' UNION, LOCAL 117, et al., Respondents.

800

Melbert B. Adams for Appellant.

Albert Picard and Francis McCarty for Respondents.

Charles P. Scully, as Amicus Curiae, on behalf of Respondents.

TRAYNOR, J.—Respondent union (hereinafter called the union) is an unincorporated association whose constitution and by-laws make it an integral part of the Building Service Employees' International Union. Appellant Newman has been a member of the union since its organization. He was elected its first treasurer, and served in this capacity on a part-time basis until the present controversy. He was last elected on December 14, 1943, for a two-year term expiring December 31, 1945. Section 9 of article 4 of the constitution and by-laws of the union provides that the treasurer shall be elected for a two-year term, and that all officers of the union shall hold office until their successors are duly elected and qualified. During his last term appellant received a salary of $70 per month, paid to him until May 15, 1944.

On April 11, 1944, the members of the union adopted an amendment to the constitution and by-laws providing, ''Only members who are employed as elevator operators under the jurisdiction of the union . . . shall be allowed to hold office in the union with the exception of members filling a full-time office. This section to become effective (30 days) after passage by the membership.'' Previously there was no requirement that officers of the union be employed as elevator operators. Appellant, who was not employed as an elevator operator, opposed the adoption of the amendment and refused thereafter to take such employment. A controversy arose between him and the union as to whether he was entitled to hold the office until the end of the term for which he was elected without complying with the requirement established by the amendment. Upon the expiration of the 30-day period the union declared appellant's office vacant and ceased to pay appellant the salary of treasurer. On May 23, 1944, a new election was held and another member of the union was elected treasurer. Appellant refused to yield to the election of a new treasurer, maintaining that until the end of his term he was the duly elected and qualified treasurer of the union and as an incident to his office was entitled to draw the salary at-

tached thereto. He refused to give up possession of the books, records, and papers of the union in his custody. Officers of the union, acting on behalf of the union, brought an action against him to recover them and $5,000 damages for detention of its property. Appellant filed a counterclaim for payment of his salary. He also filed a cross-complaint praying for payment of his salary, for declaratory relief that he was the duly elected, acting, and qualified treasurer of the union, and for an injunction to prevent the union from paying the treasurer's salary to the newly-elected treasurer. The trial court gave judgment for the union for the possession of the books, records, and papers in appellant's custody. It refused to award damages and struck appellant's counterclaim and cross-complaint. It stated in its findings: "That none of the matters set forth in the counterclaim or cross-complaint of the defendant constitutes a counterclaim or cross-complaint to the amended complaint herein; that subdivision (e) of section 3 of the by-laws of the plaintiff union reads as follows: 'The treasurer shall keep all records required to be kept by him in files provided for the purpose by the union. Such files shall be kept in the office of the union.' That without regard to whether said defendant is or is not the treasurer of said union the said plaintiff is entitled to judgment herein for the recovery of the personal property set forth in the amended complaint herein; that the said counterclaim or cross-complaint have been stricken out by this court without prejudice to further procedure." Defendant and cross-complainant appeals.

Since the judgment in the action brought by the union failed to determine whether appellant was the treasurer of the union for the remainder of his term, appellant petitioned for a writ of mandamus to compel the union to admit him "to the use and enjoyment of the office of treasurer of respondent union and to compel payment unto petitioner of the salary due him as such." The trial court issued the alternative writ, which was discharged upon trial of the case. In its findings the trial court stated among other things that the amendment requiring that part-time officers of the union be employed as elevator operators affected the tenure of petitioner's office, that this amendment was a "legal and valid amendment of the constitution and by-laws of said union," and that petitioner was "not entitled to the sum of seventy (70) dollars or any other amount per month or any amount at all from May 15, 1944, to

the date of judgment herein or for any other period." Petitioner appeals. His appeals from the judgment in the mandamus proceeding and from the judgment in the first action have been consolidated.

█ Since the term for which appellant was elected expired on December 31, 1943, there is no longer any controversy as to whether he is now entitled to reinstatement as treasurer of the union. The issues have therefore become moot except for appellant's claim for back salary for the part of his term of office that was unexpired when the union ceased to pay his salary.

Appellant contends that the back salary is due him on the ground that he was the treasurer of the union until the end of the term for which he was elected, that he was entitled to reinstatement to his office, and that as an incident to his right to reinstatement he was entitled to receive the salary connected with the office.

In his pleadings as well as in his briefs on appeal appellant contended that the amendment is invalid on the ground that it was not proposed to the members of the union in the manner required by the constitution and by-laws of the union and the international union. The trial court found in the mandamus proceeding, however, that on April 11, 1944, the union "duly and regularly amended" its constitution and by-laws by adopting the amendment in question and that petitioner was estopped from objecting to the method of adoption thereof on the ground that for many years he had "acquiesced in said method of amendment and voted for and assisted in the adoption of amendments of the said constitution and by-laws in the said same manner, and that by amendments made in the same manner the term of office of treasurer was increased from one (1) year to two (2) years while petitioner held said office, and in the same manner an amendment was adopted pursuant to which respondent union increased the salary of petitioner during his term of office and said petitioner accepted the increased salary and did not contend that the amendment pursuant to which the union so acted was not valid or make any objections to the adoption thereof." In the course of the appellate proceedings appellant waived his objection to the manner of adoption of this amendment. We assume, therefore, that the amendment was properly adopted.

Appellant relies on cases holding that an officer of an unincorporated association elected for a specified term of

office cannot be removed from his office upon charges brought against him without having been given notice of the charges and an opportunity to reply thereto. (*Bentley* v. *Hurley,* 222 Mo.App. 51 [299 S.W. 604] ; *Goller* v. *Stubenhaus,* 77 Misc. 29 [134 N.Y.S. 1043, 1050] ; see 7 C.J.S.) . Respondents contend that it is immaterial whether appellant could have been removed from his office for alleged misconduct without adequate cause and proper investigation, since the amendment merely placed a condition upon his continuance in office that was reasonably connected with the purposes of the union, and that rights to an office of an unincorporated association are subject to the right of the association to amend its by-laws to alter the terms and conditions of holding the office. In *Fugure* v. *Mutual Society of St. Joseph,* 46 Vt. 362, 368, cited by respondents, the court recognized that plaintiff's right to a widow's allowance of 25 cents per day under the by-laws of an unincorporated association was validly limited by an amendment to the by-laws, adopted after plaintiff's husband joined the association, whereby a ceiling was placed on the amount of allowance available to a widow. The court based its holding, however, on the charitable character of the allowances, stating that they "were derived solely from voluntary assessments upon the members of the society. . . . And experience might prove that, without assessments greater than the members could bear, there must be a limitation to the stipend to the widows." This case can hardly be regarded as a precedent with regard to rights not based on charitable contributions. In *Stohr* v. *San Francisco Musical Fund Society,* 82 Cal. 557, 560 [22 P. 1125], on which respondents also rely, an unincorporated association amended its by-laws regarding the period for which members were entitled to sickness benefits after plaintiff had become ill. It was held that plaintiff's right to benefits was a contract right, which under the terms of the contract was subject to changes without his consent, since the by-laws reserved the power to the members to amend them; and that the rule of law allowing such amendments "must be held to enter into and form a part of the contract." (82 Cal. 557, 560.) The decision in that case was based on the fact, however, that the by-laws did not specify the period during which a member was to receive sickness benefits. The court clearly distinguished the case from cases in which the member had acquired a right to sickness benefits for a speci-

fied period of time. (82 Cal. 557, 561-562.) Since appellant's term of office was specified in the constitution and by-laws of the union, there is no basis for applying the holding in *Stohr* v. *San Francisco Musical Fund Society, supra.* Nor do *Bowie* v. *Grand Lodge,* 99 Cal. 392 [34 P. 103], or *Robinson* v. *Templar Lodge,* 117 Cal. 370 [49 P. 170, 59 Am. St. Rep. 193], also relied on by respondents, support the contention that a right acquired under the by-laws of an unincorporated association can be retroactively defeated by an amendment to the by-laws even though the right was definitely defined and acquired before the adoption of the amendment to the by-laws, and no power was reserved to the members either by a special provision in the by-laws or by a rule of law to affect that right. (See, also, *Wist* v. *Grand Lodge,* 22 Ore. 271 [29 P. 610, 29 Am.St.Rep. 603]; 7 C.J.S. 34.)

There is an important difference, however, between a right of a member of an unincorporated association under the constitution and by-laws of an association to receive benefits and the right of an officer for a specified term to hold the office to which he was elected. An unincorporated association exists to carry out policies formulated by the majority of its members. The right of the members to determine policies would be vitiated if officers could continue in office even though a conflict developed between them and the members over policy. If an officer had a vested right to his office, superior even to the power of the members to amend the constitution and by-laws, he would represent the association even though he opposed the policies of its members or lacked the very qualifications the members require as a matter of policy.

The law does not prevent one who has appointed an agent for a specified term from revoking the agency. (Civ. Code, § 2356; *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 174 [88 P.2d 698, 89 P.2d 386]; *Stoll* v. *Stoll,* 5 Cal.2d 687, 691 [56 P.2d 226]; 1 Cal.Jur. 702; Rest., Agency, § 118(b).) There is even more reason to allow an unincorporated association to remove officers who have lost the confidence of the members or who refuse to conform to the policies established by the association. Appellant refers to the fact, however, that labor unions have grown in strength of recent years, and contends that they should have no greater power in the removal of officers than corporations have in the removal of directors. He relies on the common-law rule

that in the absence of a provision in the by-laws authorizing the shareholders of a corporation to shorten the term of office of directors, they have no power, except for cause, to remove directors before the expiration of their specified terms. (Ballantine, Corporations, 2d ed. 434; 2 Fletcher, Cyc. Corp., §§ 352, 356, 357.) There was no such rule at common law with regard to the officers of unincorporated associations. There is no reason now to adopt such a rule for such associations, for the common-law rule has been changed for corporations in this state. The rule as it applied to corporations was criticized as unsound on the ground that "the shareholders, although the sovereign owners, must submit to the control of their corporation being retained by the elected directors during their term of office, even though they have become entirely unsatisfactory." (Ballantine, ibid., 434.) This state abandoned the rule by providing in section 310(1) of the Civil Code: "The entire board of directors or any individual director may be removed from office by a vote of shareholders holding a majority of the outstanding shares entitled to vote at an election of directors." Other states have adopted similar statutes. (Ballantine, ibid., 435.) The policy that prompted abandoning the common-law rule as to the removal of corporate directors applies with equal force to officers of unincorporated associations.

Appellant contends that the amendment should be interpreted as applying only to part-time officers taking office after its passage, since a by-law, like a statute, will not be construed to operate retrospectively unless it expressly so provides. (See 6A Cal.Jur. 323.) It appears from the terms of the amendment, however, that it applies to the unexpired terms of officers holding office as well as to officers taking office in the future, for it provides that it shall take effect 30 days after its passage and that only members employed as elevator operators shall be allowed "to *hold* any office in the union with the exception of members filling a full time office." (Italics added.) Moreover, those who proposed the amendment and assisted in its adoption have construed it as applying to officers holding office at the time of the adoption of the amendment as well as to officers taking office subsequently thereto. The two part-time officers besides appellant who were not employed as elevator operators voted for the amendment and resigned during the 30-day period specified by the amendment.

■ It does not follow, however, that appellant is not entitled to back salary because the union had power to remove him from his office. Even though he was not entitled to reinstatement to his office and to his salary as an incident to holding the office, the exercise of the power to remove him from his office before the expiration of the specified term for which he was elected could constitute a breach of a contract of employment. As this court said with regard to the revocation of the authority of an agent: "Save in the case of an agency coupled with an interest, a principal has the *power* to revoke an agent's authority at any time before the agent has completed performance. (Civ Code, sec. 2536; *Flanagan* v. *Brown,* 70 Cal. 254 [11 P. 706]; *Parke* v. *Frank,* 75 Cal. 364 [17 P. 427]; *Blumenthal* v. *Goodall,* 89 Cal. 251 [26 P. 906]; 1 Cal. Jur. p. 705.) A principal may, however, curtail his *right* of revocation by contracting not to revoke the authority for a definite time. If the principal does so contract, he still retains the power to terminate the agency, and the termination cannot be prevented by the agent, but a revocation of authority within the designated period renders the principal liable for damages for the violation of a legal right of the agent, just as in the case of any other breach of contract. (*Parke* v. *Frank, supra; Blumenthal* v. *Goodall, supra; Ropes* v. *John Rosenfeld's Sons,* 145 Cal. 671 [79 P. 354]; *Sill* v. *Ceschi,* 167 Cal. 698 [140 P. 949]; *Boehm* v. *Spreckels,* 183 Cal. 239 [191 P. 5]." (*Roth* v. *Moeller,* 185 Cal. 415, 418 [197 P. 62]; *Stoll* v. *Stoll,* 5 Cal.2d 687, 691 [56 P.2d 226]; *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 174 [88 P.2d 698, 89 P.2d 386]; see 2 Mechem, Agency, § 568.) In some states statutes empower banks or other private corporations to dismiss officers or other employees at pleasure. There is a conflict of authority whether such a statute, in the absence of special provisions, should be construed to mean that the corporation can exercise its power of removal only subject to liability for damages to officers or employees employed for specified terms. (*Cox* v. *First Nat. Bank,* 10 Cal.App.2d 302, 305 [52 P.2d 524]; *In re Paramount Publix Corp.,* 90 F.2d 441 [111 A.L.R. 889] and cases there cited; see Ballantine, Corporations, 2d ed. 437; 39 Colum. L. Rev. 353; 50 Harv. L. Rev. 418; 47 Yale L.J. 1079, 1081; Unif. Business Corp. Act, § 32.)

The question arises in the present case whether the rule empowering an unincorporated association to remove officers elected for a specified term makes the contract of employment

implied in the election to office terminable at the pleasure of the association, in the absence of a special contract that the officer will be employed for the term for which he was elected. There is also the question whether appellant had a right to a fixed salary or whether his salary was subject to the discretion of the union. The constitution and by-laws of the union provide that ''The salaries of officers and committees shall, upon the recommendation of the Executive Board, be fixed and determined by the Union.'' (Art. IV, § 5.) It is contended that the salaries can be revised upward or downward at any time and that since the union could have decided that the office should carry no salary, appellant cannot recover damages. This court cannot determine these questions on this appeal.

Appellant's claim for back salary was tried only in the mandamus proceeding. His claim was based, not on breach of contract, but on the theory that he had a right to reinstatement to the office. It is settled that mandamus does not lie when there is no cause of action for reinstatement to a position, but merely a claim for damages for breach of contract. (*Irvine* v. *Gibson,* 19 Cal.2d 14, 16 [118 P.2d 812] ; *McPherson* v. *City of Los Angeles,* 8 Cal.2d 748, 749 [68 P.2d 707] ; *Northrup* v. *Haynes,* 15 Cal.App.2d 665, 666 [59 P.2d 1056] ; *Coombs* v. *Smith,* 17 Cal.App.2d 454, 455 [62 P.2d 380] ; see 34 Am.Jur. 849.)

In the action brought by the union, appellant based his claim for back salary in his cross-complaint not only on the ground that he had a right to be reinstated as treasurer and that back salary was due him as an incident to that right, but also on the ground that the union had breached a contract of employment. Such a claim was a proper subject of a counterclaim and a cross-complaint. ''Under the 1927 amendment to section 438, Code of Civil Procedure, the sole requisites of a counter-claim are that it 'must tend to diminish or defeat the plaintiff's recovery and must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action.' *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 P. 474] ; *Luse* v. *Peters, ante,* p. 625 [28 P.2d 357]. Upon counterclaim a defendant may recover damages exceeding the plaintiff's demand. (Secs. 626, 666, 857a, Code Civ. Proc.)'' (*Todhunter* v. *Smith,* 219 Cal. 690, 693 [28 P.2d 916] ; see 16 Cal.L.Rev. 363, 366.) In the present case appellant's claim for back salary tended to diminish or defeat the union's recovery of money damages allegedly sus-

tained by the detention of its books, records, and papers. Such a claim was also a proper subject of a cross-complaint. Section 442 of the Code of Civil Procedure provides: ''Whenever the defendant seeks affirmative relief against any party, relating to or dependent upon the contract, transaction, matter . . . or accident upon which the action is brought, or affecting the property to which the action relates, he may, in addition to his answer, file at the same time, or by permission of the court subsequently, a cross-complaint.'' Respondents contend that the amended complaint and the cross-complaint did not relate to the same transaction, on the ground that the amended complaint merely alleged that the union was the owner of the books, records and papers mentioned in the action, that defendant had possession thereof, that he refused to deliver possession to the union, and that it did not mention that appellant was the treasurer of the union or that he was removed from his office. It is settled, however, that ''The manner in which the complaint is drawn is not conclusive. The facts surrounding the cause of action and not the form of complaint are determinative of what constitutes the transaction. (*Hanes* v. *Coffee,* 212 Cal. 777 [300 P. 963]; *Story & Isham Com. Co.* v. *Story,* 100 Cal. 31 [34 P. 671]; *Terry Trading Co.* v. *Barsky,* 210 Cal. 428 [292 P. 474].)'' (*California Trust Co.* v. *Cohn,* 214 Cal. 619, 625 [7 P.2d 297]; *Martin* v. *Hall,* 219 Cal. 334, 337 [26 P.2d 288].) In the present case the facts underlying the action for recovery of the books, records, and papers of the union, and for money damages were the same as those on which appellant based his claim for back salary, namely, appellant's removal from office and his refusal to concede that the union could deprive him of the benefits thereof within the specified term for which he was elected.

The trial court's decision to strike appellant's counterclaim and cross-complaint denied appellant a trial of his claim for damages for breach of contract. This claim involves issues of fact, and we cannot determine the merits of the claim on this appeal without depriving the parties of their right to a trial of these issues. Moreover, the question whether appellant has a claim for damages for breach of contract has not been briefed by the parties. The briefs relate only to appellant's right to reinstatement to the office and the claim for back salary that would follow from the existence of such right.

There is no merit in respondent's contention that appellant has failed to exhaust his remedies within the union.

Article XVI of the constitution and by-laws of the internation union provides that "Any officer or member who has a grievance or believes an injustice has been done in any way in any local union may appeal to the General Executive Board." Pursuant to this provision, appellant appealed from the decision of the union vacating his office, and his appeal was unconditionally denied. It would be futile to appeal to the same board for damages on the ground that his removal from office constituted a breach of contract. (*Nissen* v. *International Brotherhood,* 229 Iowa 1028 [295 N.W. 858, 141 A.L.R. 598] ; *Lo Bianco* v. *Cushing,* 115 N.J.Eq. 558 [171 A. 778] ; *Heasley* v. *Operative Plasterers & Cement Finishers' International Assn.,* 324 Pa. 257 [188 A. 206] ; see 168 A.L.R. 1473.)

In case No. S. F. 17577 (mandamus proceeding) the judgment and order denying the motion to vacate the judgment are affirmed. In case No. S. F. 17248 (action on behalf of the union) the judgment is reversed with directions to allow the filing of defendant's counterclaim and cross-complaint and to proceed to a trial of the single issue of defendant's claim for back salary.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied November 24, 1947.