[No. B085438. Second Dist., Div. Six. Dec. 5, 1995.]

CENTURY 21 BUTLER REALTY, INC., Plaintiff and Appellant, v. JESS VASQUEZ et al., Defendants and Respondents.

COUNSEL

Jerome Zamos for Plaintiff and Appellant.

Diane Matsinger for Defendants and Respondents.

OPINION

**GILBERT, J.**—A couple enters into an exclusive authorization agreement with a broker to sell their business property. The couple is unhappy with the broker and obtains another broker who sells the property during the original listing period. Is the original listing broker entitled to the commission set forth in the authorization agreement? Yes.

Century 21 Butler Realty, Inc. (Century 21) appeals from the summary judgment granted to respondents, Jess and Lorraine Vasquez, Judy Hockenberry, the Beaver-Free Corporation and Robert Brooks.[1] Because the Vasquezes breached the original listing agreement by failing to pay the commission, we reverse the summary judgment granted by the trial court in favor of respondents.

FACTS

Jess and Lorraine Vasquez decided to sell their restaurant. On October 14, 1992, the Vasquezes executed a written exclusive authorization agreement with Century 21 to sell the property. The agreement was scheduled to expire on March 10, 1993. In November 1992, the Vasquezes' niece, Judy Hockenberry, recommended changing brokers because Century 21 had not performed adequately and foreclosure was imminent. On November 11, 1992, Jess Vasquez executed a letter drafted by Hockenberry to "terminate" the agreement and Hockenberry mailed it immediately.

On November 16, 1992, Hockenberry met with Robert T. Brooks, a broker with Beaver-Free Realty, who agreed to represent the Vasquezes after his firm reviewed the letter. Brooks knew from Hockenberry's ex-husband that the Vasquezes were trying to sell their property, but he did not know they had listed it until he met with Hockenberry. On November 19, 1992, Hockenberry obtained a written offer to purchase the property from HKM III, a Burger King franchise. She provided a copy of the offer to Brooks. In February 1993, the Vasquezes sold the property to HKM III through Brooks.

---

[1]Beaver-Free Corporation is now known as Pacifica Real Estate Group.

Century 21 sued the Vasquezes, Hockenberry, Brooks, the Beaver-Free Corporation and others for breaching the listing agreement and for interfering with an economic relationship.[2] Respondents moved for summary judgment and appellant moved for summary adjudication of issues. The trial court granted respondents' motion and denied appellant's motion.

In granting summary judgment to respondents, the court found undisputed that Century 21 failed to give timely notice to the Vasquezes of prospective transferees it had developed for the subject property. The court ruled that such notice constituted a condition precedent to recovery of the commission under the listing agreement. The trial court denied appellant's motion for reconsideration and it entered the summary judgment. This appeal ensued only from the summary judgment in favor of respondents.

## Discussion

■ "On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

■ There is no dispute as to the material issues of fact here. The question before us is one of law involving interpretation of Century 21's written listing agreement with the Vasquezes. ■ Interpretation of contractual provisions is a judicial function. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *New Haven Unified School Dist.* v. *Taco Bell Corp.* (1994) 24 Cal.App.4th 1473, 1483 [30 Cal.Rptr.2d 469].) Where, as here, the listing agreement is prepared by a broker, any uncertainty in its provisions relating to the commission should be construed in favor of the seller. (*Matthews* v. *Starritt* (1967) 252 Cal.App.2d 884, 887 [60 Cal.Rptr. 857].)

■ An exclusive authorization to sell agreement may provide for compensation to the initial listing agent if the property is sold to anyone before termination of the authorization agreement, regardless of who effected the sale. (Civ. Code, § 1086, subd. (f)(1).) Whether the broker may recover compensation depends on the terms of the particular listing contract. (See generally, *Blank* v. *Borden* (1974) 11 Cal.3d 963, 970-971 [115 Cal.Rptr. 31, 524 P.2d 127], which concerns the right to withdraw property from the market upon payment to the broker of a sum certain under a form agreement not before us today.)

---

[2]The other defendants are not parties to this appeal.

Section 4, subsection (a) of the instant agreement provides, in pertinent part, that the Vasquezes agree "to compensate Broker *irrespective of agency relationships* as follows: . . . if the property is . . . sold, . . . during the term hereof, or any extension by Broker, or through any other person . . . ." (Italics added.)

Section 4, subsection (b) provides that compensation is due and payable to Century 21 if, during the term of the agreement, the property is "withdrawn" from sale or if it is sold during the term without the consent of Century 21. (See generally, *Blank* v. *Borden, supra,* 11 Cal.3d 963.)

Under section 4, subsection (c) of the agreement, the listing broker may be entitled to compensation if the property is sold within 210 days "after the termination of this agreement" to anyone with whom it had "negotiations" prior to final termination. To obtain compensation under subsection (c), the owners must receive written notice, "within five calendar days aftertermination of this Agreement," of the names of prospective transferees which the original broker gathered during the listing period.

The Vasquezes argue that because they "terminated" the agreement under section 4, subsection (c) and Century 21 did not provide them with a timely list of prospective buyers, Century 21 is not entitled to the commission. We disagree.

In November 1992, the Vasquezes unilaterally ended their agency relationship with Century 21 by sending their "termination" letter. They had the right to end the agency before the agreement expired, but doing so did not eviscerate Century 21's right to compensation. (Civ. Code, § 2356, subd. (a)(1); *Elevator Operators etc. Union* v. *Newman* (1947) 30 Cal.2d 799, 807 [186 P.2d 1]) Under the agreement, Century 21 earns the compensation stated therein if the listed property is sold during the listing term. The listing term is spelled out in the first paragraph of the agreement. The exclusive listing agreement at issue remained in effect until March 10, 1993. The Vasquezes breached the agreement when they refused to pay the commission stated therein to Century 21 upon the sale of the property in February 1993. Century 21 earned its commission because the Vasquezes, through Hockenberry and Brooks, sold the property in February 1993, before the exclusive listing period expired.

The word "termination" as used in section 4, subsection (c) of the agreement refers to the end of its term. The Vasquezes characterize their withdrawal from their agency relationship with Century 21 before the agreement's expiration date as a "termination." This is not a termination as

contemplated by subsection (c). Section 4, subsection (c) does not apply here.

The summary judgment is reversed. Costs to appellants.

Stone (S. J.), P. J., and Yegan, J., concurred.