[Civ. No. 5745. First Appellate District, Division One.—October 14, 1927.]

M. V. B. MACADAM CO., INC. (a Corporation), Appellant, v. B. S. BRYANT, Respondent.

Goldman, Nye & Spicer for Appellànt.

Walter Christie and Frederic C. Benner for Respondent.

KNIGHT, J.—Plaintiff appeals from an adverse judgment in an action to recover $1,500 alleged to be due for services rendered as real estate broker in connection with a proposal made by respondent to exchange his ranch in Sonoma County for an apartment house in San Francisco.

It appears from the evidence that in May, 1924, after having had certain preliminary negotiations with a real estate salesman named Cohen, who was connected with the appellant company, respondent addressed a communication to appellant, dated May 6, 1924, wherein he agreed to exchange his ranch subject to a bank encumbrance of $12,500 bearing interest at seven per cent, for an apartment house situated on Hyde Street in the city and county of San Francisco, subject to two encumbrances, one for $20,000 bearing interest at six per cent, the other for $6,500 bearing interest at eight per cent. Continuing, the communication provided: "Should you succeed in securing an acceptance of this agreement on or before May 15, 1924, I agree to pay you as commission $1,500 for your services rendered and you may also receive a commission from second party." On May 8, 1924, Cohen, accompanied by Arthur M. Cle-

ment and wife, with whom the exchange was to be made, inspected the ranch in Sonoma County, and upon their return to San Francisco the same day Cohen drew a purported acceptance of respondent's offer on the reverse side thereof, which Clement and his wife signed. It reads as follows:

"May 8, 1924.

"We hereby accept the proposal upon the opposite side subject to the following conditions to wit: All furniture in the house to be included in Bill of Sale. The full commission to be $1000.00 of which $500.00 is payable in cash and $500.00 in note, 180 days with interest at 6%. The Mac-Adam Company is to procure a 2nd loan in the sum of $1500.00 for the period of one year at seller's option, the premium on said second mortgage to be not more than $150.00 and interest at 8%. That the matter of interest on first mortgage on Hyde Street Property to be corrected to 7%. It is understood that the McAdam Co. is also receiving a commission from the first party.

"(Signed) ARTHUR· M. CLEMENT.
"FRIEDA L. CLEMENT.

"Witness: A. E. COHEN."

After the foregoing had been signed, Cohen concluded that it did not constitute a legal acceptance of respondent's offer because of the insertion therein of the conditions that respondent include his furniture in the exchange, and that the interest on the first mortgage on Hyde Street property be corrected to read seven per cent. After discussing the matter with the Clements, Cohen struck out the two clauses embodying the conditions mentioned by drawing a line through them, and on the margin of the paper opposite each clause had Clement write the word "Eliminated" and sign his name. On the following morning Cohen phoned respondent, and without informing him of the purported acceptance by the Clements, asked him about including his furniture in the transfer of his property, which respondent refused to accede to. The next day, which was May 10th, after obtaining certain information relating to the value of the apartment house, respondent informed Cohen personally that his offer was withdrawn, at which time Cohen told respondent of the existence of the Clements' acceptance. Later, on the same day, respondent mailed appellant a written cancella-

tion of his offer, which reached appellant on Monday, May 12, 1924.

It is apparent from the terms of respondent's proposal that appellant was not entitled to receive the commission specified therein unless it procured an unconditional acceptance of the particular offer made by respondent, that is, an acceptance which would have been legally enforceable at his option in case of default on the part of those seeking to be bound thereby. The trial court found that no such acceptance had been obtained, and we believe that this finding is fully supported by the facts and the law. The purported acceptance in its modified form was based, as will be observed, upon the express condition that the MacAdam Company obtain for the Clements "a 2nd loan (on respondent's ranch) in the sum of $1,500, for the period of one year at seller's option, the premium on said second mortgage to be not more than $150.00 and interest at 8%." In other words, the Clements agreed to exchange the apartment house for the ranch as proposed in respondent's offer only in case a second loan on the ranch was obtained for them on the terms specified. The imposition of such condition clearly destroyed the mutuality of consideration, because as the transaction then stood, although respondent's proposal was enforceable against him, the acceptance thereof was unenforceable against the Clements until the condition as to the second loan was complied with by appellant. Construed, therefore, as a proposal for exchange of properties, the instrument signed by respondent was revocable by him at any time before its acceptance (*Hamlin* v. *Barnhart*, 26 Cal. App. 632 [147 Pac. 1188]).

The case just cited, in its essential facts and on principle, is analogous to the one before us, and the court there held: "The right of respondent to withdraw from the agreement seems clear. There was no mutuality of consideration provided for. On the one hand, it was proposed to bind respondent in absolute terms to perform on her part while appellant's performance was made conditional. He was to perform only in case he could borrow four thousand five hundred dollars on respondent's property, and impliedly the agreement was that this loan should be upon whatever conditions he might choose to impose as to duration of loan term, rate of interest, etc. In the event of his default, re-

spondent had no remedy as against his caprice. The agreement of the parties imported no obligation on appellant's part which respondent could enforce. 'If a promise does not offer any enforceable legal right or forbearance it is not a consideration. This principle is sometimes expressed in the rule that promises, in order to be a valid consideration each for the other, must be mutual. . . . Where the parties assume to make a contract in which a promise is the consideration for a promise, and analysis shows that one of the promises does not impose any legal duty upon the party making it, such promise is not a consideration for the other promise.' (1 Page on Contracts, secs. 302, 303, 304.) It will be of no service to multiply the citations to this fundamental rule governing the making of contracts. Having construed the contract as imposing no definite obligation on appellant to perform (a construction which his own words expressly declare to have been the one intended) there is no room left for further argument to the point that the alleged contract lacked mutuality of obligation or of consideration, which means the same thing. Treated as a mere offer to exchange, the proposal was revocable by respondent at any time before acceptance by appellant."

Furthermore, it is held that an offer which is met by a counter offer is thereby rejected (*MacRae* v. *Ross*, 170 Cal. 74 [148 Pac. 215]) ; also that one who submits a counter proposal instead of accepting the offer cannot abandon the substitute and accept the original offer (*Niles* v. *Hancock*, 140 Cal. 157 [73 Pac. 840]). In the present case the insertion in the proposed acceptance of the condition as to obtaining a second loan on respondent's ranch doubtless constituted a counter offer, and therefore operated as a rejection of respondent's proposal, and ended the transaction.

Appellant contends, however, that respondent's proposal to exchange properties was in legal effect a contract of employment, and that since respondent revoked the same prior to May 15, 1924, which was the limitation of time granted appellant to obtain an acceptance of respondent's proposal, appellant was entitled to receive the full commission provided for therein. We find no merit in the contention, because there appears to be no language used in the instrument indicating that it was intended to be anything more than a mere proposal to exchange properties.

Even assuming it to be a contract of employment, appellant is in no better position to claim the commission provided for therein, because it is well settled that a contract of agency to sell or exchange lands, if not coupled with an interest in the subject of the agency or given for a valuable consideration, and which contains no provision that the authority of the agent shall remain irrevocable for any particular period, may be revoked by the principal at any time before the performance by the agents. (*Brown* v. *Pforr*, 38 Cal. 550; *Roth* v. *Moeller*, 185 Cal. 415 [197 Pac. 62].) A different rule prevails where the contract does contain a stipulation that the agency shall remain irrevocable for a specified time, the distinction between the two classes of cases being clearly pointed out in *Blumenthal* v. *Goodall*, 89 Cal. 251 [26 Pac. 906], *Ropes* v. *Rosenfeld's Sons*, 145 Cal. 671 [79 Pac. 354], and *Roth* v. *Moeller, supra.*

The clause of the contract reviewed in *Brown* v. *Pforr, supra,* is substantially the same as the one involved here, the principal there having agreed to pay the agents a commission if they "would undertake to seek, and should, within a month from that date, succeed in finding a person who should be willing and able, and who would agree to purchase" the principal's property for the price stated. The court held that the limitation of time mentioned therein was a restriction limiting the time allowed for performance by the agent and not a restriction upon the principal's right of revocation, the court saying: "It seems obvious to us that the restriction was intended for the benefit of the defendant, and not the plaintiffs. The force of the limitation is, that the defendant will pay them the stipulated price for the service if they completely perform it within one month; otherwise he will pay them nothing. There is nothing directly or impliedly affecting the question of revocation; and, indeed, we are unable to perceive how, under any circumstances, a mere limit as to the time allowed for the performance of a contract of agency to sell land, can be construed into an agreement on the part of the principal not to revoke the power."

In the present case appellant makes no claim of interest in the subject matter of the proposed exchange; the contract was in its nature purely unilateral, no contractual duty being imposed upon appellant, the consideration for

the promise to pay the commission was wanting until appellant performed its part of the contract, which, as already shown, it did not do; and the contract contained no provision that appellant's authority thereunder should remain irrevocable for any period. █ Under such circumstances and in view of the decisions above cited, the contract in question, if it be one of employment, was revocable by respondent at any time prior to performance by appellant.

The conclusion we have reached that the trial court's decision on the controlling issues should be sustained makes it unnecessary to discuss the other points presented by the appeal.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.